# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

A.B., as lawful guardian *ad litem*
of Minor Child, L.B.,

        Plaintiff,                      **COMPLAINT FOR DAMAGES**

v.

                                        **CIV. NO.:**

BURKE COUNTY PUBLIC SCHOOLS
BOARD OF EDUCATION, LINDA
BRADSHAW, JOHN ROES 1–10,
And MICHAEL ANDREW ALEXANDER,

        Defendants.

## <u>COMPLAINT AND JURY DEMAND</u>

## INTRODUCTION

1.      In June 2012, the European Police ("Europol") intercepted a child pornography syndicate operating in Spain and discovered child abuse videos and images taken of little girls in Burke County Public Schools ("BCPS") that had been distributed worldwide. The girls were filmed inside elementary school classrooms causing Europol agents to immediately contact the U.S. Embassy and the FBI. State and federal agents moved swiftly to arrest a third-grade teacher at BCPS's Hildebran Elementary School ("Hildebran"), Defendant Michael Andrew Alexander. Defendant Alexander has since been sentenced to almost one-half century of incarceration for horrific misconduct.

2.      Throughout his twelve years as a BCPS teacher, Defendant Alexander was allowed to excuse young girls from other class and school activities and keep them with him long enough to engage in sex with them, and, among other atrocities, create and distribute child abuse images. L.B. was made to drink concoctions containing his semen, which he called "pirate

juice." Upon information and belief, Defendant Alexander used school computers to upload, download, copy and distribute sexually deviant images of the children to a worldwide audience of sexual degenerates and child-pornography enterprises.

3.      L.B. was eight years old when Defendant Alexander began sexually abusing and filming her in school.  L.B. made several complaints to Hildebran's guidance counselor, Defendant Linda Bradshaw, that she was being teased and bullied by other girls in class for being singled out as Defendant Alexander's "favorite."  At or around the same time that L.B. went to Defendant Bradshaw with her complaints of being bullied, another of Defendant Alexander's victims, L.B.'s classmate, complained to Defendant Bradshaw that she was being inappropriately touched by Defendant Alexander.

4.      At least one other BCPS employee was also made aware of Defendant Alexander's heinous misconduct when the now former principal at Hildebran received a complaint from a student's father during the 2008-09 school year that his child had come home from school very upset because Defendant Alexander had shown the student pictures on a school computer of women and animals engaging in explicit sex acts.  When the parent complained, the principal told the parent that there was nothing they could do about it, provided no further response to the parent, and did not investigate or further report the allegation.

5.      Similarly, Defendant Bradshaw did nothing to investigate or further report L.B.'s complaint.  Instead, Defendant Bradshaw commanded the young girl to go back to Defendant Alexander's class.  Defendant Bradshaw's deliberate indifference to L.B.'s complaints, and the circumstances of which she was aware, or had reason to be aware of, violated no less than six explicit provisions of BCPS's Manual requiring her to protect L.B.by, at a minimum, reporting the circumstances and concerns to the principal, superintendent, and police authorities.  That, and

2

other deliberate indifference, violated duties owed this young, vulnerable child under federal and state law.

6.     Denied help, further reporting, or investigation of her complaint, L.B.continued to be sexually abused in unconscionable ways and filmed by Defendant Alexander in school.

7.     L.B., by her lawful guardian *ad litem*, A.B., brings this civil action against the Defendants herein for various violations of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq*.; the Fourteenth Amendment to the United States Constitution (under 42 U.S.C. § 1983); the North Carolina Constitution, and for other violations of North Carolina law.

## JURISDICTIONAND VENUE

8.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, including: claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq.*; and claims for deprivation of civil rights under 42 U.S.C. § 1983 and the United States Constitution.

9.     This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) & (4) because this litigation involves claims for deprivation of civil rights under 42 U.S.C. § 1983.

10.     This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 13 U.S.C. § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the civil rights and other federal questions claims in this action.

11.     Venue in this District is proper as all parties are located in this District, and all of the relevant facts occurred in this District.

3

**PARTIES**

12.      Plaintiff, A.B., is a resident of the State of North Carolina residing in Burke County and is the parent and lawful guardian *ad litem* of L.B., a minor child resident of the State of North Carolina residing in Burke County, and at all relevant times herein a student at Hildebran.

13.      Hildebran and BCPS are run by Defendant Burke County Public Schools Board of Education ("School Board"), a corporate body granted powers by state law. Defendant School Board has the authority to sue or be sued under N.C. Gen. Stat. § 115C-40.

14.      The State of North Carolina has delegated to Defendant School Board the "general control and supervision of all matters pertaining to the public schools in their respective local school administrative unit…." The School Board is charged with "execut[ing]…the school laws in" its district (N.C. Gen. Stat. § 115C-40) so as "to provide adequate school systems within their respective local school administrative unit…, as directed by law." N.C. Gen. Stat. § 115C-47(1).

15.      Defendant School Board is a recipient of federal funds within the meaning of 20 U.S.C. § 1681.

16.      Defendant Linda Bradshaw is, upon information and belief, a resident of Burke County, North Carolina. Defendant Bradshaw is sued in her individual capacity and in her official capacity to the extent that she was a final policy-maker on student-counseling, abuse-response, student health and safety, or other related issues.

17.      At all times relevant to this Complaint, Defendant School Board employed Defendant Bradshaw as a guidance counselor at Hildebran.

18.      Defendants John Roes 1-10 are, upon information and belief, residents of Burke

4

County, North Carolina, who were employed or otherwise associated with BCPS and Defendant School Board and who knew of Defendant Alexander's misconduct and disregarded their duties to act appropriately under North Carolina and federal law. Certain John Roes 1-10 are sued in their individual capacity and in their official capacity as the governmental officials whose edicts and acts represent the official policy, practices, customs, and regulations of Defendant School Board, and it is those policies, practices, customs, and regulations that violated L.B.'s constitutional and other rights and contributed to her injuries. Other John Roes 1-10 are sued only in their individual capacities.

19.     Defendant Michael Andrew Alexander, upon information and belief, was at all relevant times herein a resident of Burke County, North Carolina. Defendant Alexander is currently serving a 49.5 year sentence at the North Carolina Department of Correction's Central Prison in Raleigh, North Carolina.

20.     At all times relevant to this Complaint, Defendant School Board employed Defendant Alexander as an elementary school teacher, including the last seven years at Hildebran.

### GENERAL ALLEGATIONS

21.     L.B. has attended Hildebran since kindergarten, and is currently a fourth-grade student at the school.

22.     During the 2011-12 academic year, Defendant Alexander was L.B.'s third-grade teacher at Hildebran. Defendant Alexander, under color of law, used his authority position to repeatedly separate and confine L.B. during school hours to sexually abuse, videotape, and otherwise criminally mistreat her. Upon information and belief, such misconduct included:

    a.      ejaculating into L.B.'s boots, filming her walking around in them as she

5

had, in his words, "seamen legs," and uploading and distributing those

images to pleasure other sexual deviants around the world;

b. mixing his semen with grape juice, filming L.B.drinking the concoction in

a game he called "pirates," and uploading and distributing those images

via the internet to pleasure other sexual deviants around the world;

c. instructing L.B.to wear dresses and high-heeled boots to school so he

could make suggestive and sexually deviant movies and photographs of

her, which he distributed via the internet to sexual deviants around the

world; and

d. forcing vile sex acts upon L.B., which he filmed and distributed via the

internet to sexual deviants around the world.

23.     Defendant Alexander, under color of law, controlled L.B. during school hours and

on school premises, regularly using his role and authority as a public school teacher to excuse

her from other classes and school activities and falsely imprison her in a room where he would

abuse her and create child-abuse images, some of which would be distributed worldwide.

24.     BCPS officials and employees adopted and perpetuated a practice and *de facto*

policy of allowing Defendant Alexander's repeated exercise of control over L.B.'s and other

preadolescent girls' activities at school, allowing him to unilaterally excuse her and other

preadolescent girls from other teachers' classes and school activities.

25.     L.B.is not the only BCPS student abused by Defendant Alexander during school

hours and on school grounds.  Upon information and belief, Defendant Alexander's heinous

misconduct with BCPS students dates back to at least 2001 and includes as many as 50 victims.

Upon information and belief, that misconduct includes, among other things:

6

a. forcing vile sex acts on children as young as seven years old, which he may have filmed and distributed via the internet to sexual deviants around the world;

b. forcing young girls to engage in sex acts with each other, which he may have filmed and distributed via the internet to sexual deviants around the world;

c. downloading, uploading, and distributing films and photographic images via the internet of girls as young as four years old being raped by men;

d. forcing young girls to drink his semen, in treats and concoctions he called "truth serum" or "pirate juice," which he may have filmed and distributed via internet to sexual deviants around the world;

e. ejaculating into boots, and then filming girls walking around in them as he told them they had "seamen legs," and uploading and distributing those images to pleasure other sexual deviants around the world; and

f. threatening his young victims that if they told their families or anyone else about the movies he made or the things he did to them that he would come to their house and kill them and their families.

26. Defendant Alexander's sex and child abuse of L.B. includes abuse and misconduct that is nearly identical to the heinous crimes he carried out against L.B.'s classmate. (*See P.B. v. Burke County Public Schools Board of Education, et al.*, Case No. 12-cv-334 (W.D.N.C.).)

27.     Defendant Alexander's history of sexual abuse and exploitation of elementary children predates his work for BCPS, also occurring while he was a teacher in neighboring McDowell County, where he worked before being hired by Defendant School Board in 2001.

28.     While she was being abused, and teased and bullied by other girls in her class for being Defendant Alexander's "favorite," L.B. went to Defendant Bradshaw, Hildebran's only guidance counselor, to complain of the mistreatment and bullying by her classmates.

29.     At or around this same time, Defendant Bradshaw had received a complaint from one of L.B.'s classmates that Defendant Alexander had inappropriately touched that child.

30.     Defendant Bradshaw did nothing to investigate or report L.B.'s complaint, and she scolded the other child to "stop lying." In each instance she commanded the girls to return to Defendant Alexander's class.

31.     Defendant Bradshaw had the authority, duty, and obligations under law and BCPS regulations to take action to protect L.B.

32.     Defendant Bradshaw was deliberately indifferent to L.B.'s complaint and the circumstances in Defendant Alexander's classroom, and, like others at BCPS, adopted and perpetuated the practice and *de facto* policy of allowing actions like Defendant Alexander's to continue unchecked, without taking any action whatsoever to investigate, report, or otherwise follow up on L.B.'s complaint or protect her; or investigate, report, or otherwise inquire as to why Defendant Alexander regularly excused young girls from other classes and school activities, separated them from others and confined them in a room long enough to perpetrate and film sexual atrocities.

33.     Upon information and belief, Defendants John Roes 1-10 knew, or had reason to know, Defendant Alexander was sexually abusing L.B.and secluding and confining her and other

students; had the authority, duty, and obligation under law to protect L.B., and failed to do so, instead adopting a practice and *de facto* policy allowing his horrific behavior.

34.     Defendant School Board created a dangerous situation for L.B. and other students by adopting practices and *de facto* policies that gave Defendant Alexander the power and authority, and allowing him to exercise it unchecked, to remove preadolescent girls from regular curriculum and activities and confine them with him long enough for him to abuse and film them.

35.     The BCPS Policy Manual, "Staff-Student Relations" (Policy 4040 – Issued Date: April 22, 2010), expressly mandates that "[a]ny employee who has reason to believe that another employee is inappropriately involved with a student . . . [including entering into sexual relationships with any student] is *required to report this information to the superintendent*."

36.     The BCPS Policy Manual, "Discrimination, Harassment and Bullying Complaint Procedures" (Policy 4015 – Issued Date: September 20, 2010), mandates that "[a]ny employee who . . .  has reliable information or reason to believe that an individual *may* have been discriminated against, harassed or bullied in violation of policy 4021 *must* report the offense *immediately*" to an individual elsewhere designated in Policy 4015.  These designated individuals include, among others, Hildebran's principal and assistant principal, Defendant Bradshaw's immediate supervisor, BCPS's director of human resources, or BCPS's Title IX coordinator.

37.     The BCPS Policy Manual, "Prohibition against Discrimination, Harassment and Bullying" (Policy 4021 – Issued Date: March 26, 2010), expressly prohibits, among other things, sexual harassment, including "conduct [that] is sufficiently severe, persistent, or pervasive that it has the purpose or effect of unreasonably interfering with . . . a student's educational

performance, limiting a student's ability to participate in or benefit from an educational program or environment, or creating an abusive, intimidating, hostile or offensive . . . education environment." Under Policy 4021, such sexual harassment can be from employee to student, and employees "are required to report any actual or suspected violations of this policy."

38.     The BCPS Policy Manual,"School Safety" provision (Policy 4200 – Issued Date: April 29, 2010), expressly mandates that school staff "share in the responsibility to take reasonable precautions and safety measures to create and maintain safe schools . . . [and] assure the safety of students on school grounds . . . before, during, and after school." Policy 4200 mandates that "[s]taff *must report immediately to the principal* any student's information or their own observation of unusual or suspicious behavior or acts of violence."

39.     The BCPS Policy Manual, "Child Abuse – Reports and Investigations" (Policy 4240 – Issued Date: March 26, 2010), expressly states that "[a]ny school employee who knows or has cause to suspect child abuse or neglect is legally required to report the case of the child to the director of social services. The employee also will report the case immediately to the principal. Any doubt about reporting a suspected situation will be resolved in favor of reporting and the report will be made immediately."

40.     The BCPS Policy Manual, "Code of Ethics and Standards of Professional Conduct for Educators and Staff," (Policy 7300 – Issued Date March 26, 2010, Revised May 9, 2011), is substantially derived from the "Code of Ethics for North Carolina Educators adopted by the State Board of Education, June 6, 1997," and expressly mandates:

> . . .ALL STAFF MEMBERS . . . [b]e familiar with, support, and, where appropriate, enforce board policies, administrative procedures, school rules and applicable laws;. . . [a]ttend to the safety and welfare of students . . .; [a]ddress or appropriately direct any complaints concerning the schools . . .; protect . . . students from conditions within the educator's control that circumvent learning or are detrimental to the health and safety of the students . . .[and] take . . . action to

remedy any observed violation of the Code of Ethics for North Carolina Educators . . .

41.     According to the BCPS "Communication Plan," "[t]he Burke County Public School System is a responsible guardian for the children in its care."

42.     Defendant Bradshaw was deliberately indifferent to and disregarded BCPS's numerous policies and L.B.'s plea for help, despite the fact that she was receiving pleas for help from other of Defendant Alexander's students that school year, resulting in L.B.suffering further sexual assaults, videotaping, isolation, threats, and serious, permanent physical and psychological injuries.

43.     Despite these written provisions, Defendant School Board adopted and perpetuated a *de facto* policy of allowing teachers such as Alexander to remove preadolescent girls from school activities, confine them with him, and abuse them without inquiry regarding the removal or confinement.

44.     Further, despite its written provisions, Defendant School Board failed to adequately train Defendants Bradshaw, John Roes 1-10, and other employees on how to respond to children's reports of inappropriate touching by teachers, or to adequately monitor, watch for, and prevent inappropriate detainment by a teacher of individual students isolated in a classroom. Defendant School Board's failure to train was deliberately indifferent towards the likelihood that constitutional violations would result, and was deliberately indifferent towards the obvious need for such training.

45.     Upon information and belief, other BCPS employees (John Roes 1-10) were also deliberately indifferent to and adopted and perpetuated the practice and *de facto* policy that allowed Defendant Alexander's longstanding practice of exercising control over preadolescent girls, excusing them from other classes and school activities, and confining them for extended

periods sufficient to sexually assault, photograph, and videotape them. That policy, practice, and deliberate indifference resulted in L.B.being continually sexually assaulted, videotaped, isolated, and threatened, and caused serious, permanent physical and psychological injuries.

46.     On Wednesday, June 13, 2012, after being contacted by the FBI and the North Carolina State Bureau of Investigation, the Burke County Sheriff's Office arrested Defendant Alexander. Defendant Alexander was then removed from his teaching post.

47.     Since Defendant Alexander's arrest, Defendant School Board has refused to offer any counseling, assistance, or meaningful information of any kind to L.B. and her family.

48.     Defendant Alexander was charged under North Carolina criminal law for multiple felony sex offenses involving minors dating back to 2001, covering the duration of his tenure and access to preadolescent girls at BCPS.

49.     Following Defendant Alexander's arrest, Defendant School Board was deliberately indifferent to the heinous harm, sexual abuse, and injuries caused to L.B.

50.     Defendant Alexander admitted his guilt, and is currently serving a 49.5 year sentence at the North Carolina Department of Correction's Central Prison in Raleigh, North Carolina.

51.     On information and belief, Defendant School Board has waived any immunity it might otherwise be entitled to through the purchase of liability insurance.

52.     Before the sexual assaults and abuse began, L.B.was a bright and eager young student, who would come home everyday and excitedly tell of the things she had learned at school. L.B.has been severely traumatized by the physical, psychological, and sexual abuse. She suffers ongoing emotional distress and post-traumatic stress and has been unable to talk with her parents about what happened.

53. L.B. will, for the foreseeable future, need therapy for her injuries. The great psychological and emotional harm caused to L.B.by these events has also restricted, and will for the foreseeable future continue to restrict, her access to BCPS's educational opportunities.

## COUNT I
### Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.*
### (Defendant School Board)

54. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

55. Defendant School Board was on notice of Defendant Alexander's sexual misconduct towards L.B.based on: 1) her complaints to BCPS's guidance counselor, Defendant Bradshaw, about her treatment in Alexander's classroom; 2) her classmate's report to Defendant Bradshaw that same school year of Defendant Alexander's inappropriate touching; and 3) the previous report by a parent to the now former Hildebran principal of Defendant Alexander's forcing his son to view images of women and animals engaged in explicit sex acts on school computers. Defendant School Board, by its action and inaction, created a climate whereby criminal misconduct was tolerated, thus encouraging repeated misconduct and proximately causing injury to L.B.

56. Defendant School Board, through its agents, Defendants Bradshaw and John Roes 1-10, had actual knowledge of the sexual assaults, exploitation, discrimination, and harassment Defendant Alexander was perpetrating against BCPS's young children on school grounds during long periods of time when he used his authority to seclude himself with them.

57. The BCPS agent(s) with this knowledge, including Defendant Bradshaw, the former Hildebran principal, and Defendants John Roes 1-10, had the authority and duty to take

corrective action to end or prevent the sexual abuse, exploitation, discrimination, and harassment.

58.     Defendant Bradshaw was the lone Guidance Counselor at Hildebran.

59.     Apart from L.B.'s vulnerable status as a third-grade child, and the special relationship extant under law between her and Defendants School Board, Bradshaw, and John Roes 1-10, as employees and agents of BCPS, Defendants Bradshaw and John Roes 1-10 had explicit, affirmative, and mandatory duties under *no less than six* BCPS Policy Manual provisions (*see* Policy 4015, 4021, 4040, 4200, 4240, and 7300 *supra.*) to report, investigate, or otherwise take action to protect L.B. when they were aware of, or had any reason to believe, the inappropriate conduct being committed by Defendant Alexander.

60.     The sexual abuse, exploitation, discrimination, and harassment inflicted on L.B.by Defendant Alexander effectively barred her access to an educational opportunity and benefit.

61.     Defendant School Board acted with deliberate indifference, including through its agents, Defendants Bradshaw, and John Roes 1-10, toward L.B.'s rights to a safe and secure education environment, thus materially impairing her ability to pursue her education at BCPS in violation of the requirements of Title IX, by, *inter alia*:

> a.     failing to protect L.B. or other young girls despite her and other students' complaints, and the knowledge that Defendant Alexander over a period of years regularly excused her and other young girls from classes and school activities and confined them with him long enough to sexually abuse them and create and distribute child abuse images; or was deliberately indifferent thereto;

b.      allowing Defendant Alexander to continuously and repeatedly remove L.B. and other young girls from school activities and confine them with him long enough to sexually abuse them and create and distribute child abuse images; or was deliberately indifferent thereto;

c.      allowing Defendant Alexander to continue teaching young girls, including L.B., and having direct and unsupervised access to and control over L.B. notwithstanding her and other students' complaints; or was deliberately indifferent thereto;

d.      failing to follow or  enforce numerous express mandates in the BCPS Policy Manual concerning L.B.'s and other students' complaints concerning Defendant Alexander's inappropriate conduct with them; or was deliberately indifferent thereto;

e.      failing to inform L.B.'s family, and other female students and their families, of the danger posed by Defendant Alexander to young girls when he was repeatedly allowed to exercise control over them, excuse them from other classes and school activities, and confine them with him long enough to sexually abuse and create and distribute child abuse images; or was deliberately indifferent thereto;

f.      creating a climate that tolerated sexual assault, exploitation, abuse, and other misconduct, and that tolerated the complete disregard of reports of sexual misconduct by teachers or the unusual, dangerous conduct engaged in by Defendant Alexander over a period of years; or was deliberately indifferent thereto; and

g. through other actions, inactions, and deliberate indifference.

62. As a direct and proximate result of this misconduct and deliberate indifference, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a. past, present, and future physical and psychological pain, suffering, and impairment;

    b. medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c. impaired educational capacity;

    d. attorneys' fees and costs; and

    e. such other and further relief that this Court deems just and proper.

**COUNT II**
**Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq*.**
**(Defendant School Board)**

63. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

64. By the action and inaction after the Burke County Sherriff arrested Defendant Alexander, Defendant School Board acted with deliberate indifference to the rights of L.B. and other female students to a safe and secure education environment. Defendants materially impaired L.B.'s access to educational opportunities and benefits at BCPS in violation of the requirements of Title IX, by *inter alia*:

    a. failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to

16

L.B.after she was sexually assaulted, exploited, and abused by her third-grade teacher; or being deliberately indifferent thereto;

b.      failing to terminate or otherwise discipline Defendant Bradshaw for her willful disregard of the safety and rights of L.B. and other young girls; or being deliberately indifferent thereto; and

c.      through other actions, inactions, and deliberate indifference.

65.      Defendant School Board had actual knowledge of the discrimination against L.B. after the arrest of Defendant Alexander.

66.      Defendant School Board and BCPS's personnel, including Defendants Bradshaw and John Roes 1-10, had actual knowledge and the authority to take corrective action to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to L.B. to help minimize the harm suffered due to the discrimination and harassment, including sexual assaults, abuse, and exploitation, and chose not to do so.

67.      As a direct and proximate result of Defendants' actions, inactions, and deliberate indifference, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.      past, present, and future physical and psychological pain, suffering, and impairment;

b.      medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.      impaired educational capacity;

d.      attorneys' fees and costs; and

e.      such other and further relief that this Court deems just and proper.

## COUNT III
### Violation of 42 U.S.C. § 1983
### Deprivation of Educational Property Rights – Special Relationship
### (Defendants School Board, Bradshaw, and John Roes 1-10)

68.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

69.     Defendants Alexander, Bradshaw, and John Roes 1-10 were at all relevant times employees of Defendant School Board, acting under color of state law, empowered and required by the State of North Carolina to, among other things, ensure an open and safe environment for educational services.

70.     Defendants School Board, Bradshaw, and John Roes 1-10 created a danger through their adoption and perpetuation of a practice and *de facto* policy that permitted Defendant Alexander, under color of law, to remove preadolescent girls, including L.B., from regular school activities and restrain their liberty through false imprisonment and seclusion.

71.     When removed from regular activities and falsely imprisoned by Defendant Alexander under color of law, Defendant Alexander was in custody and complete control of L.B. and his other preadolescent victims.

72.     This practice and *de facto* policy rendered L.B. and other preadolescent victims unable to care for themselves.

73.     The custody and control Defendant Alexander was permitted to exercise over L.B. and his other victims by virtue of the practice and *de facto* policy adopted and perpetuated by Defendants School Board, Bradshaw, and John Roes 1-10 created a special relationship whereby Defendants were required to protect L.B. and provide for her basic human needs and safety.

74.     Defendants Bradshaw and John Roes 1-10 witnessed or otherwise had actual and/or constructive knowledge of Defendant Alexander's ongoing deprivation of L.B.'s constitutionally protected property interests in educational benefits.

75.     Defendants School Board, Bradshaw, and John Roes 1-10 deliberately failed to provide for L.B. and the other victims' basic human needs by adopting and perpetuating practices and *de facto* policies that permitted Defendant Alexander to remove L.B. from school curriculum activities, thus failing to provide a safe environment for educational services, effectively denying her access to educational services provided by Hildebran and unlawfully depriving her of her educational rights.

76.     The acts by Defendants constitute a disregard for, and deliberate indifference to, L.B.'s wellbeing and her constitutionally protected property interests in educational benefits under the Fourteenth Amendment to the United States Constitution.

77.     Further, Defendants School Board, Bradshaw, and John Roes 1-10, created a dangerous situation for L.B. and other students through their policies, practices, customs, and regulations of disregarding reported, or otherwise known, situations of inappropriate and sexually abusive conduct by teachers against students.

78.     Defendants' denial of L.B.'s educational rights violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

79.     As a direct and proximate result of such misconduct and deliberate indifference, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.      past, present, and future physical and psychological pain, suffering, and impairment;

b.      medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.      impaired educational capacity;

d.      exemplary damages;

e.      attorneys' fees and costs; and

f.      such other and further relief that this Court deems just and proper.

**COUNT IV**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Educational Property Rights – State-Created Danger**
**(Defendants School Board, Bradshaw, and John Roes 1-10)**

80.      Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

81.      Defendants' practice and *de facto* policy of allowing teachers like Defendant Alexander free reign to excuse preadolescent girls from regular school activities and falsely imprison, seclude,and confine them with him in rooms where he could sexually abuse them and create child-abuse images created a danger for L.B. and other BCPS students.

82.      This practice and *de facto* policy directly created the danger of improper conduct, including sexual abuse and creation of child-abuse images, which danger was realized by L.B. and Defendant Alexander's other preadolescent victims.

83.      This practice and *de facto* policy effectively denied L.B.'s constitutional right to educational services.

84.      Defendants' denial of L.B.'s educational rights violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly

and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

85.     As a direct and proximate result of such misconduct and deliberate indifference, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.     past, present, and future physical and psychological pain, suffering, and impairment;

b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.     impaired educational capacity;

d.     exemplary damages;

e.     attorneys' fees and costs; and

f.     such other and further relief that this Court deems just and proper.

**COUNT V**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Educational Property Rights – Failure to Train**
**(Defendants School Board and John Roes 1-10)**

86.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

87.     At all relevant times, Defendants School Board and John Roes 1-10 who were policy-makers and administrators had a duty to train Defendants Bradshaw and other John Roes 1-10 concerning BCPS policies on reporting known or suspected abuse of students like L.B.

88.     At all relevant times, Defendants School Board and John Roes 1-10 who were policy-makers and administrators had a duty to train Defendants Bradshaw and other John Roes

21

1-10 concerning signs of abuse and inappropriate conduct by BCPS employees like Defendant Alexander against BCPS students like L.B.

89.     At all relevant times, Defendants School Board and John Roes 1-10 who were policy-makers and administrators had a duty to train Defendants Bradshaw and other John Roes 1-10 regarding written policies that would prevent or prohibit actions like those taken by Defendant Alexander when he repeatedly removed L.B. and others from regular school activities, falsely imprisoned them, secluded and confined them with him, sexually abused them, and created child-abuse images.

90.     Defendants School Board and John Roes 1-10 who were policy-makers and administrators otherwise failed to train BCPS employees, including Defendants Bradshaw and other John Roes 1-10.

91.     Defendants School Board and John Roes 1-10's failure to train effectively denied L.B.'s constitutionally protected educational property rights.

92.     Defendants' denial of L.B.'s educational rights violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

93.     As a direct and proximate result of this failure to train, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

        a.      past, present, and future physical and psychological pain, suffering, and impairment;

b.     medical bills, counseling, and other costs and expenses for past and future

medical and psychological care;

c.     impaired educational capacity;

d.     exemplary damages;

e.     attorneys' fees and costs; and

f.     such other and further relief that this Court deems just and proper.

**COUNT VI**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Educational Property Rights**
**(Defendant Alexander)**

94.     Plaintiff incorporates all preceding paragraphs into this County by reference as though fully restated herein.

95.     Defendant Alexander was at all relevant times acting under color of law through his position of authority as an elementary school teacher.

96.     Defendant Alexander's actions of removing L.B. and his other preadolescent victims from regular school activities, confining them with him, sexually abusing them, and creating child-abuse images, effectively denied L.B.'s constitutional right to educational services.

97.     Defendants' denial of L.B.'s educational rights violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

98.     As a direct and proximate result of Defendant Alexander's misconduct, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. past, present, and future physical and psychological pain, suffering, and impairment;

b. medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. impaired educational capacity;

d. exemplary damages;

e. attorneys' fees and costs; and

f. such other and further relief that this Court deems just and proper.

## COUNT VII
### Violation of 42 U.S.C. § 1983
### Deprivation of Right to Bodily Integrity – Special Relationship
### (Defendants School Board, Bradshaw, and John Roes 1-10)

99. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

100. Defendants Alexander, Bradshaw, and John Roes 1-10 were at all relevant times employees of Defendant School Board, acting under color of state law, empowered and required by the State of North Carolina to, among other things, ensure an open and safe environment for educational services.

101. Defendants School Board, Bradshaw, and John Roes 1-10 created a danger through their adoption and perpetuation of a practice and *de facto* policy that permitted Defendant Alexander, under color of law, to remove preadolescent girls, including L.B., from regular school activities and restrain their liberty through false imprisonment and seclusion.

102. When removed from regular activities and falsely imprisoned by Defendant Alexander under color of law, Defendant Alexander was in custody and complete control of L.B. and his other victims.

103.     This practice and *de facto* policy rendered L.B. and other preadolescent victims unable to care for themselves.

104.     The custody and control Defendant Alexander was permitted to exercise over L.B. and his other victims by virtue of the practice and *de facto* policy adopted and perpetuated by Defendants School Board, Bradshaw, and John Roes 1-10 created a special relationship whereby Defendants were required to protect L.B. and provide for her basic human needs and safety.

105.     Defendants Bradshaw and John Roes 1-10 witnessed or otherwise had actual knowledge of Defendant Alexander's ongoing deprivation of L.B.'s constitutional right to bodily integrity.

106.     Defendants School Board, Bradshaw, and John Roes 1-10 deliberately failed to provide for L.B. and the other victims' basic human needs by adopting and perpetuating practices and *de facto* policies that permitted Defendant Alexander to remove L.B. from school curriculum activities, thus failing to provide a safe environment for educational services, effectively denying her constitutional right to bodily integrity.

107.     The acts by Defendants violated L.B.'s constitutionally protected right to bodily integrity.

108.     Defendants' denial of L.B.'s right to bodily integrity violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

109. As a direct and proximate result of such misconduct and deliberate indifference, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

      a.    past, present, and future physical and psychological pain, suffering, and impairment;

      b.    medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.    impaired educational capacity;

      d.    exemplary damages;

      e.    attorneys' fees and costs; and

      f.    such other and further relief that this Court deems just and proper.

**COUNT VIII**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Right to Bodily Integrity – State-Created Danger**
**(Defendants School Board, Bradshaw, and John Roes 1-10)**

110. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

111. Defendants' practice and *de facto* policy of allowing teachers like Defendant Alexander free reign to excuse preadolescent girls from regular school activities and falsely imprison, seclude, and confine them with him in rooms where he could sexually abuse them and create child-abuse images created a danger for L.B. and other BCPS students.

112. This practice and *de facto* policy directly created the danger of improper conduct, including sexual abuse and creation of child-abuse images, which danger was realized by L.B. and Defendant Alexander's other preadolescent victims.

113.    This practice and *de facto* policy effectively denied L.B.'s constitutional right to bodily integrity.

114.    Defendants' practice and *de facto* policy demonstrated disregard for, and deliberate indifference to, L.B.'s wellbeing and her constitutionally protected right to bodily integrity under the Fourteenth Amendment to the United States Constitution.

115.    Defendants' denial of L.B.'s right to bodily integrity violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

116.    As a direct and proximate result of such misconduct and deliberate indifference, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

     a.    past, present, and future physical and psychological pain, suffering, and impairment;

     b.    medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

     c.    impaired educational capacity;

     d.    exemplary damages;

     e.    attorneys' fees and costs; and

     f.    such other and further relief that this Court deems just and proper.

**COUNT IX**
**Violation of 42 U.S.C. § 1983**
**Deprivation of Right to Bodily Integrity – Failure to Train**
**(Defendants School Board and John Roes 1-10)**

117.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

118.     At all relevant times, Defendants School Board and John Roes 1-10 who were policy-makers and administrators had a duty to train Defendants Bradshaw and other John Roes 1-10 concerning BCPS policies on reporting known or suspected abuse of students like L.B.

119.     At all relevant times, Defendants School Board and John Roes 1-10 who were policy-makers and administrators had a duty to train Defendants Bradshaw and other John Roes 1-10 concerning signs of abuse and inappropriate conduct by BCPS employees like Defendant Alexander against BCPS students like L.B.

120.     At all relevant times, Defendants School Board and John Roes 1-10 who were policy-makers and administrators had a duty to train Defendants Bradshaw and John Roes 1-10 regarding written policies that would prevent or prohibit actions like those taken by Defendant Alexander when he repeatedly removed L.B. and others from regular school activities, falsely imprisoned them, secluded and confined them with him, sexually abused them, and created child-abuse images.

121.     Defendants School Board and John Roes 1-10 who were policy-makers and administrators otherwise failed to train BCPS employees, including Defendants Bradshaw and other John Roes 1-10.

122.     Defendants School Board and John Roes 1-10's failure to train effectively denied L.B.'s constitutionally protected right to bodily integrity.

123.     Defendants' failure to train demonstrated disregard for, and deliberate indifference to, L.B.'s wellbeing and her constitutionally protected right to bodily integrity under the Fourteenth Amendment to United States Constitution.

124.     Defendants' denial of L.B.'s right to bodily integrity violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

125.     As a direct and proximate result of this failure to train, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.     past, present, and future physical and psychological pain, suffering, and impairment;

b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.     impaired educational capacity;

d.     exemplary damages;

e.     attorneys' fees and costs; and

f.     such other and further relief that this Court deems just and proper.

## COUNT X
### Violation of 42 U.S.C. § 1983
### Deprivation of Right to Bodily Integrity
### (Defendant Alexander)

126.     Plaintiff incorporates all preceding paragraphs into this County by reference as though fully restated herein.

127.     Defendant Alexander was at all relevant times acting under color of law through his position of authority as an elementary school teacher.

128.     Defendant Alexander's actions of removing L.B. and his other preadolescent victims from regular school activities, falsely imprisoning them, secluding and confining them

29

with him, sexually abusing them, and creating child-abuse images, effectively denied L.B.'s constitutional right to bodily integrity.

129.    Defendant Alexander's actions violated L.B.'s constitutionally protected right to bodily integrity.

130.    Defendant Alexander's denial of L.B.'s right to bodily integrity violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages.

131.    As a direct and proximate result of Defendant Alexander's misconduct, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

   a.    past, present, and future physical and psychological pain, suffering, and impairment;

   b.    medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

   c.    impaired educational capacity;

   d.    exemplary damages;

   e.    attorneys' fees and costs; and

   f.    such other and further relief that this Court deems just and proper.

## COUNT XI
### Violation of North Carolina Constitution, Article I, § 19
### Deprivation of Educational Property Rights
### (Defendants School Board, Bradshaw, and John Roes 1-10)

132.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

133.   Defendants Bradshaw and John Roes 1-10 were at all relevant times employees of Defendant School Board, acting under of color of state law, empowered and required by the State of North Carolina to, among other things, ensure an open and safe environment for educational services.

134.   Defendants failed to provide a safe environment for educational services. Defendants adopted and perpetuated a practice and *de facto* policy that permitted Defendant Alexander to remove L.B. from school curriculum and activities with her classmates, effectively denying her access to educational services provided by Hildebran and unlawfully depriving her of her educational rights.

135.   Defendants created a dangerous situation for L.B. and other students through policies, practices, customs, and regulations that gave Defendant Alexander the power and authority, and allowed him to exercise it unchecked, to remove preadolescent girls from regular curriculum and activities and seclude and confine them with him long enough to abuse and film them.

136.   Defendants, under color of law, further created a dangerous situation for L.B. and other students through their policies, practices, customs, and regulations of disregarding reported, or otherwise known, situations of inappropriate and sexually abusive conduct by teachers against students.

137.   Defendants' acts, policies, practices, and customs constituted disregard for, and deliberate indifference towards, L.B.'s wellbeing and her constitutionally protected property interests in educational benefits under Article I, § 19 of the North Carolina Constitution, and directly and proximately caused great injury and damage to these rights and liberty interests, for which she is entitled to compensatory and exemplary damages, including but not limited to:

a.    past, present, and future physical and psychological pain, suffering, and

      impairment;

b.    medical bills, counseling, and other costs and expenses for past and future

      medical and psychological care;

c.    impaired educational capacity;

d.    exemplary damages;

e.    attorneys' fees and costs; and

f.    such other and further relief that this Court deems just and proper.

## COUNT XII
### Violation of North Carolina Constitution, Article I, § 19
### Deprivation of Right to Bodily Integrity
### (Defendants School Board, Bradshaw, and John Roes 1-10)

138.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

139.    Defendants, acting under color of state law, were empowered and required by the State of North Carolina to, among other things; ensure students are free from sexual assaults by their teachers.

140.    Defendants deliberately failed to prevent the sexual assaults of L.B. by Defendant Alexander, both before and after she complained to Defendant Bradshaw, and Defendant Bradshaw received notice from one of L.B.'s classmates of Defendant Alexander's abuse, resulting in further invasions of L.B.'s bodily integrity and violating her rights under Article I, § 19 of the North Carolina Constitution.

141.    Defendants further created a dangerous situation for L.B. and other students by adopting and perpetuating practices and *de facto* policies giving Defendant Alexander the power and authority, and allowing him to exercise it unchecked, to remove young girls from regular

curriculum and activities and seclude and confine them with him long enough to abuse and film them.

142.	Further, Defendants created a dangerous situation for L.B. and other students through their policies, practices, customs, and regulations of disregarding reported, or otherwise known, situations of inappropriate and sexually abusive conduct by teachers against students.

143.	The actions and inactions by Defendants displayed a total disregard for, and deliberate indifference to, L.B.'s bodily integrity. As a direct and proximate result of such misconduct and deliberate indifference, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

> a.	past, present, and future physical and psychological pain, suffering, and impairment;
>
> b.	medical bills, counseling, and other costs and expenses for past and future medical and psychological care;
>
> c.	impaired educational capacity;
>
> d.	exemplary damages;
>
> e.	attorneys' fees and costs; and
>
> f.	such other and further relief that this Court deems just and proper.

### COUNT XIII
### State Law Claims
### (Defendants Bradshaw and John Roes 1-10)

144.	Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

145.	Defendant Bradshaw was, at all relevant times, acting as the sole guidance counselor at Hildebran.

146.     Defendant John Roes 1-10 were, at all relevant times, employees, agents, or officials of BCPS.

147.     Defendants Bradshaw and John Roes 1-10, upon information and belief, knew or should have known that Defendant Alexander was engaging in inappropriate conduct with L.B. and other preadolescent students.

148.     Defendants Bradshaw and John Roes 1-10 had a duty, pursuant to non-discretionary, mandatory policies, to report the abuse against L.B. or others to appropriate authorities.

149.     Defendants Bradshaw and John Roes 1-10 did not report pursuant to those policies.

150.     Defendants Bradshaw and John Roes 1-10, through their failure to report and other acts or omissions, were deliberately indifferent to the abuse Defendant Alexander was perpetrating against L.B. and others preadolescent students.

151.     As a direct and proximate result of Defendants Bradshaw and John Roes 1-10's negligence and deliberate indifference, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.     past, present, and future physical and psychological pain, suffering, and impairment;

    b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.     impaired educational capacity;

    d.     exemplary damages;

    e.     attorneys' fees and costs; and

f.     such other and further relief that this Court deems just and proper.

## COUNT XIV
## State Law Claims
### (Defendant Alexander)

152.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

153.     Defendant Alexander's conduct in removing L.B. from school activities, falsely imprisoning her, sexually abusing her, creating child-abuse images of her, and distributing such images worldwide caused great injury to L.B.

154.     Defendant Alexander further harmed L.B. through threats that, if she told her family about his conduct, he would come to her house at night and kill L.B. and her family.

155.     Defendant Alexander's conduct was not consented to, was offensive, and caused bodily harm.

156.     Defendant Alexander further placed L.B., on multiple occasions, in imminent fear of impending peril.

157.     Defendant Alexander's intentional conduct was outrageous and caused L.B. extreme mental and emotional distress.

158.     As a direct and proximate result of Defendant Alexander's actions, L.B. sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.     past, present, and future physical and psychological pain, suffering, and impairment;

b.     medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

35

c.  impaired educational capacity;

d.  exemplary damages;

e.  attorneys' fees and costs; and

f.  such other and further relief that this Court deems just and proper


Respectfully submitted, this the 14th day of January, 2013.


**BODE & GRENIER, LLP**                     **TATUM & ATKINSON, PLLC**


By: _____          By:/s/   Robert M. Tatum
    Douglas E. Fierberg                     Robert M. Tatum
    (Admission subject to approval)         (Bar No. 30435)
    Peter C. Grenier                        Tatum &Atkinson, PLLC
    (Admission subject to approval)         702 Glenwood Avenue
    Bode & Grenier, LLP                     Raleigh, NC  27607
    1150 Connecticut Avenue, N.W.           919-741-4020
    Ninth Floor                             rtatum@tatumatkinson.com
    Washington, DC  20036
    202-828-4100

**COUNSEL FOR PLAINTIFF**